















```
MEG   12/4/01   8:43
3:99-CV-02384   SOUTH CONE INC V. TIMEX CORPORATION
*65*
*P/A.*
```

ORIGINAL

1 | Edward J. McIntyre (SBN 080402)
William McCurine, Jr. (SBN 66773)
2 | SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B. Street, Suite 1200
3 | San Diego, California 92101
Telephone: (619) 231-0303
4 | Facsimile: (619) 231-4755

5 | Marie V. Driscoll
Patrick T. Perkins
6 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
7 | New York, New York 10017
Telephone: (212) 813-5900
8 | Facsimile: (212) 813-5901

9 | *Attorneys for Defendant TIMEX CORPORATION*

10 |                UNITED STATES DISTRICT COURT

11 |          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12 |

13 | SOUTH CONE, INC.,                    Case No. 99 CV 2384 L AJB

14 |              Plaintiff,

15 |      vs.                            **MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
16 | TIMEX CORPORATION,                  DEFENDANT TIMEX CORPORATION'S
                                        MOTION IN LIMINE TO EXCLUDE
17 |              Defendant.             PLAINTIFF'S EXPERT REPORTS
                                        MOTION 1 OF 2**

18 |                                     Date:  January 7, 2002
                                        Time:  9:00 a.m.
19 |                                     Place:  Chambers of the Honorable M. James
20 |                                     Lorenz United District Judge.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

Preliminary Statement ................................................................................................ 1

Legal Standard On Motion In Limine ....................................................................... 1

Argument ................................................................................................................... 2

    I.  Jeffrey Harbaugh and Pete Rocky Do Not Qualify as Experts ......................... 2

        A. Jeffrey Harbaugh ..................................................................................... 3

        B. Pete Rocky .............................................................................................. 4

    II.  The Testimony of Jeffrey Harbaugh Must Be Excluded ................................. 5

        Opinion 1 ...................................................................................................... 8

        Opinion 3 .................................................................................................... 10

        Opinion 6 .................................................................................................... 10

        Opinion 8 .................................................................................................... 11

    III. THE EXPERT REPORT OF PETE ROCKY MUST BE EXCLUDED ...................... 12

        Opinion 1 .................................................................................................... 13

        Opinion 2 .................................................................................................... 13

        Opinion 4 .................................................................................................... 14

        Opinion 5 .................................................................................................... 14

        Opinion 6 .................................................................................................... 14

        Opinion 7 .................................................................................................... 14

        Opinion 8 .................................................................................................... 15

        Opinion 9 .................................................................................................... 15

    IV. THE BOTHUN REPORT IS INADMISSIBLE ................................................. 16

        1. Calculations of Timex's Sales and Incremental Profit Margin. ................. 17

        2. Reasonable Royalty ................................................................................. 17

        3. Corrective Advertising ............................................................................. 20

        4. Lost Profits .............................................................................................. 22

CONCLUSION .......................................................................................................... 25

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Adray v. Adry-Mart, Inc.*, 76 F.3d 984 (9th Cir. 1996)........................................................20

*Aguilar v. International  Longshoreman's Union Local #10*, 966 F.2d 443 (9th
Cir. 1992) ...........................................................................................................1, 3, 6

*American Home Products Corp. v. Barr Laboratoriess, Inc.*, 656 F. Supp. 1058
(D.N.J. 1987)................................................................................................................11

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber, Co.*, 561 F.2d 1365 (10th
Cir. 1977)................................................................................................................21

*Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993)........................1, 2, 5, 9, 12, 16

*First Savings Bank F.S.B. v. United States Bancorp*, 117 F. Supp. 2d 1078 (D.
Kan. 2000)............................................................................................7, 9, 12, 24

*George v. Morgan Construction Co.*, 389 F. Supp. 253 (E.D. Pa. 1975)............................3

*Havenfield Corp. v. H&R Block, Inc.*, 509 F.2d 1263 (8th Cir.) .........................................3

*Ideal World Marketing Inc. v. Duracell Inc.*, 15 F. Supp. 2d 239 (E.D.N.Y. 1998) .........11

*Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993
(9th Cir. 2001)..........................................................................................1,2 5, 12, 15

*KW Plastics v. United States Can Co.*, 131 F. Supp. 2d 1289 (M.D. Ala. 2001)..............24

*Kern's Kitchen, Inc. v. Bon Appetit*, 669 F. Supp. 786 (W.D. Ky. 1987) ............................6

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...........................................................2

*Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271
(S.D.N.Y. 1998)................................................................................................................9

*Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir.).........................................19, 20

*Mac Sales v. E.I. du Pont de Nemous & Co.*, 1996 U.S. Dist. LEXIS 3199 (E.D.
La. March 8, 1996)................................................................................................23

*PetsMart, Inc. v. Lanrus, Inc.*, No. 91-1721,1992 U.S. Dist. LEXIS 11257 (S.D.
Cal. Mar. 30, 1992)................................................................................................10

*Playboy Enterprises, Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066 (S.D. Cal. 1999) .................................................................................................................6

*Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502 (2d Cir. 1989) .................11

*Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215 (9th Cir. 1987) ...........................9

*Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999) ...........................17

*Seatrax, Inc. v. Sonbeck International, Inc.*, 200 F.3d 358 (5th Cir. 2000).................17, 23

*Stx, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q. 2d 1492 (N.D. Cal. 1997) ...............................24

*TDM Partners v. Rolm Corp.*, No. C-89-20387, 1991 U.S. Dist. LEXIS 14295 (N.D. Cal. Sept. 26, 1991) ....................................................................................25

*Transclean Corp. v. Bridgewood Services, Inc.*, 101 F. Supp. 2d 788 (D. Minn. 2000) ................................................................................................8, 10, 13, 14

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675 (D. Kan. 1997) .............................................................................................3, 9, 10, 16

*United States v. 99.66 Acres of Land*, 970 F.2d 651 (9th Cir. 1992)..................................17

*United States v. Arney*, 248 F.3d 984 (10th Cir. 2001).......................................................10

*United States v. Hook*, 195 F.3d 299 (7th Cir.)..................................................................18

## DOCKETED CASES

*A & M Records, Inc. v. Napster, Inc.*, No. C99-05183, 2000 U.S. Dist. LEXIS 20668 (N.D. Cal. Aug. 10, 2000)...................................................................................2

*Total Containment, Inc. v. Dayco Products, Inc.*, No. 1997-CV-6013, 2001 U.S. Dist. LEXIS 15838 (E.D. Pa. Sept. 6, 2001) ..........................................................24

*Trovan v. Pfizer, Inc.*, No. CV-98-00094, 2000 WL 709149 (C.D. Cal. May 24, 2000) ............................................................................................................18

## FEDERAL STATUTES

15 U.S.C. § 1072.................................................................................................................24

Timex Corporation files this Motion In Limine to exclude the expert reports of Jeffrey Harbaugh dated February 12, 2001 ("Harbaugh Report"), Pete Rocky dated February 12, 2001 ("Rocky Report") and Deborah Bothun dated August 16, 2001 ("Bothun Report") and their testimony proffered by plaintiff South Cone, Inc.[1]

## Preliminary Statement

This is a case for trademark infringement, unfair competition and related state claims arising out of the Timex REEF GEAR trademark which has been used on watches since 1995 and which is the subject of a federal trademark registration.  Plaintiff South Cone uses the marks REEF, REEF BRAZIL and REEF GIRL (hereafter referred to as "REEF mark") in a different field primarily on sandals and flip-flops.  It owns no registration for the REEF mark for watches and has never sold any watches in the U.S. under the REEF mark.  Since introduction of the TIMEX REEF GEAR watch, there has been no credible evidence of consumer confusion and no monetary damage to plaintiff.  Perkins Decl. ¶ 5.  The expert reports of Jeffrey Harbaugh, Pete Rocky and Deborah Bothun are an attempt to create evidence where none exists.  However, these reports are premised on baseless assumptions, uncorroborated facts and incomplete evidence and as such are inadmissible.

## LEGAL STANDARD ON MOTION IN LIMINE

The purpose of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 591 (1993). This purpose is not satisfied where the opinions offered are not supported by evidence or expertise. *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1001 (9th Cir. 2001) (excluding testimony of witness where only expertise was based on his experience, his "hobby" of studying Korean business practice, input from office staff and his marriage to a Korean woman).  Nor is this purpose satisfied by having the expert act as judge and jury by opining on the ultimate issues in the case - - namely consumer confusion. *Aguilar v. International*

---

[1] The reports are annexed as Exhibits D, G and I to the Declaration of Patrick T. Perkins dated November 30 , 2001 ("Perkins Decl.").

1

*Longshoreman's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992) (matters of law are inappropriate subjects for expert testimony).

Plaintiff wants to dignify the testimony of Messrs. Harbaugh and Rocky and Ms. Bothun by cloaking them in the mantle of experts. As experts, their statements would carry added weight with the jury. Because of this, "care must be taken to assure that a proffered witness truly qualifies as an expert, and that such testimony meets the requirement" of Federal Rule of Evidence 702. *Jinro*, 266 F.3d at 1004. Here, Messrs. Rocky and Harbaugh do not qualify as experts and none of plaintiff's witnesses offer testimony that meets the requirements of the Federal Rules of Evidence.

Federal Rule of Evidence 702 applies specifically to the testimony of experts and requires that the expert possess scientific, technical or other "specialized" knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. The trial court must ensure that any expert testimony being proffered "is relevant to the task at hand" and that it has a reliable basis in the knowledge and experience of the relevant discipline. *Daubert*, 509 U.S. at 597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). *See also A & M Records, Inc. v. Napster, Inc.*, No. C99-05183, 2000 U.S. Dist. LEXIS 20668 (N.D. Cal. Aug. 10, 2000) (applying *Daubert* gate-keeping function to determine whether reports of survey experts, experts on the issue of irreparable harm and marketing experts should be excluded).

In exercising its gate-keeping function, the district court must exclude evidence that is not reliable. Allowing the jury to weigh the evidence is not enough. If the testimony offered has no basis in fact, data or principles or has no reliable basis in the knowledge or experience of the expert, the testimony cannot be considered reliable and cannot be dignified or admitted in evidence as an expert opinion. Here, the gate-keeping function of the district court requires that the testimony of Rocky, Harbaugh and Bothun not be admitted.

## ARGUMENT

**I.      JEFFREY HARBAUGH AND PETE ROCKY DO NOT QUALIFY AS EXPERTS**

To qualify as an expert, one must possess "specialized knowledge" that will assist the finder of fact. F.R.E. 702. Moreover, that knowledge must relate to the issue on which the

opinion is being offered. *George v. Morgan Constr. Co.,* 389 F. Supp. 253, 259 (E.D. Pa. 1975); *Havenfield Corp. v. H&R Block, Inc.,* 509 F.2d 1263, 1273 (8th Cir.), *cert. denied,* 421 U.S. 999 (1975) ("It is important that expert witnesses have experience in transactions that are as similar as possible to the transaction upon which they are being asked to comment."). *See also, United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 173 F.R.D. 675, 689 (D. Kan. 1997) (finding witness unqualified to render opinions contained in report where witness did not do work in connection with violations on which he was opining). The resumes presented by Messrs. Harbaugh and Rocky, Perkins Decl., Exhs. E and H, as well as their expert reports make it clear that neither possesses skill, experience or knowledge in the field of consumer perception, market research, trademark infringement, likelihood of confusion, false endorsement or any of the other areas on which they are opining. As such, there is no basis for qualifying them as experts or for allowing the admission of their expert reports, opinion or testimony. *Havenfield,* 509 F.2d at 1273 (expert witness must have experience in transactions as similar as possible to the situation in which he is asked to comment).

A. Jeffrey Harbaugh

Mr. Harbaugh has been involved for 10 years in the action sports industry - snowboarding, skateboarding, surfing. His expertise and interest is in working with companies in transition experiencing fast growth, cash constraints, rapid market change, severe financial distress (turnaround) and owner/manager conflict. Harbaugh Dep. p. 14, l. 16-p. 15, l. 17.[2] His opinions, however, are not on any topic of issue related to his jobs, experience or expertise. Four of the eight opinions set forth in his expert report (numbers 2, 4, 5 and 7) go not only to issues of consumer perception but to the ultimate issue in the case - - whether Timex's use of REEF GEAR in connection with watches, in light of South Cone's use of the REEF mark for beach sandals, is likely to cause confusion, is likely to create a false affiliation, or is likely to dilute or disparage South Cone's REEF mark. Mr. Harbaugh is not permitted to testify to those ultimate issues. *Aguilar,* 966 F.2d at 447. Mr. Harbaugh's other opinions relate to the strength and

---

[2] Excerpts from the Deposition of Jeffrey Harbaugh, taken August 23, 2001, are attached as Exhibit 2 to Joint Notice of Lodgement.

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

distinctiveness of South Cone's REEF mark (opinion 1); the demographics and characteristics of customers of South Cone's REEF product (opinion 3); whether the term "gear" is generic (opinion 6); and whether watches are within the zone of natural expansion for South Cone (opinion 8). Perkins Decl., Exh. D. None of these opinions are based on any specialized knowledge of Mr. Harbaugh.

Mr. Harbaugh has no experience relevant to the issue of consumer perception, which is at the heart of his opinions, and none of his experience concerns any intellectual property issues. Harbaugh Dep. p. 17, ll. 7-20, p. 18, ll. 6-21. Mr. Harbaugh lacks any specialized knowledge of issues relating to likelihood of confusion, false affiliation, dilution or genericness, nor has he had formal education or continuing education in issues relating to trademark infringement, likelihood of confusion or false endorsement. Yet these are the very areas in which he has given his expert opinion. *Id.* p. 20 ll. 1-13. Not surprisingly, the witness has not written on any issues in the intellectual property field (other than the expert report he proffers here). *Id.* p. 20, ll. 14-18. And he has never before acted as an expert or provided expert testimony in any case, including any involving the subjects identified in his report. *Id.* p. 21, ll. 13-16. Indeed despite his involvement as a consultant to companies in the action sports industry, Mr. Harbaugh admitted that he has <u>never</u> been involved in or been faced with issues similar to the issues in this case. *Id.* p. 113, ll. 1-5; p. 114, l. 7-p.115, l. 2. Furthermore, he could not recall ever dealing with the issues that are addressed in his expert report or expressing any opinions similar to those expressed in his report. *Id.* p. 113, l. 15-p. 114, l. 6. Given the above, Mr. Harbaugh certainly cannot qualify to give the type of opinions he is offering.

B.    <u>Pete Rocky</u>

Mr. Rocky has expressed opinions on the following: whether there is a market niche in the "beach-lifestyle-surf industry" (opinion 1); the fame of South Cone's REEF mark (opinion 2); whether sports watches are a significant part of the "beach-lifestyle-surf industry" (opinion 3); whether watches are a natural expansion of South Cone's current line (opinion 4); whether the REEF brand of South Cone is "hip and cool" (opinion 5); the consumer demographics for the "beach-lifestyle-surf industry" (opinion 6); that South Cone's REEF brand would be damaged if

1    people were confused or thought an affiliation exists between South Cone and Timex (opinion

2    7); that GEAR is generic (opinion 8); that South Cone is referred to as REEF and is known by

3    the mark REEF (opinion 9); and that the Timex REEF GEAR watch has the functions necessary

4    to be a watch useful to surfers (opinion 10).  Perkins Decl., Exh. G.

5         What is Mr. Rocky's expertise for rendering these opinions?  None.  According to his list

6    of qualifications, Mr. Rocky has been a surfing champion and a professional surfer.  He also has

7    written on subjects associated with the sport of surfing, has provided commentary about surfing

8    and has created forums for people to participate in surfing events.  Perkins Decl., Exh. H.  He

9    lacks any specialized knowledge about trademarks, about the strength of trademarks, or about

10   consumers' perception of trademarks, including perceptions of the respective marks of the parties

11   in this case.  His surfing experience does not give him a basis for providing the expert opinions

12   offered here.  At most, Mr. Rocky is offering his lay opinion as a member of the surfing

13   community.  Yet this is not the type of expert opinion that is permissible under *Daubert* or under

14   the Federal Rules of Evidence.  See *Jinro*, 266 F.3d at 1004 (finding district court abused

15   discretion in allowing testimony of witness who came "cloaked with the mantle of an expert"

16   where witness claimed to be expert on Korean business practices and culture, but had no

17   education or training as a cultural expert generally, or as an expert on Korean culture specifically

18   and instead was a professional investigator who had a "hobby" of studying Korean business

19   practice).

20   **II.      THE TESTIMONY OF JEFFREY HARBAUGH MUST BE EXCLUDED**

21        Because Mr. Harbaugh lacks specialized knowledge sufficient for him to render opinions

22   in the areas of trademark infringement, likelihood of confusion, false endorsement and the like,

23   his testimony must be excluded.  Assuming *arguendo* that Mr. Harbaugh can qualify as an

24   expert, there is still no basis for admitting his "expert" opinion.

25        Mr. Harbaugh's opinions are based on faulty assumptions and incomplete facts.  He

26   states that the sale, promotion, advertising and marketing of the Timex REEF GEAR watches

27   creates in the minds of the consumer a false affiliation, sponsorship and/or co-branding

28   perception with REEF (Opinion 2); that an association between REEF and TIMEX will likely

5

1   create a negative association in the minds of the customers of REEF and damage the REEF brand

2   including its image, its distribution channels and its franchise (Opinion 4); that, as a result of the

3   defendant's use of the mark REEF GEAR, the distinctiveness of REEF is blurred and tarnished

4   (Opinion 5); and that the use of the TIMEX house mark on the REEF GEAR watches enhances

5   the likelihood of confusion about the relationship between the parties.  (Opinion 7).  Perkins

6   Decl., Exh. D.  These opinions each go to the ultimate issues in this case.  An expert (assuming

7   Mr. Harbaugh even qualifies) cannot opine on ultimate legal issues and any opinions addressing

8   such issues are *not* admissible.  *Playboy Enters, Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066,

9   1100 (S.D. Cal. 1999) ("Federal Rules of Evidence 702 and 704 were not intended to allow

10  experts to offer opinions embodying legal conclusions"); *see also Aguilar*, 966 F.2d at 447

11  (citations omitted); *Kern's Kitchen, Inc. v. Bon Appetit*, 669 F. Supp. 786, 791 (W.D. Ky. 1987),

12  *rev'd on other grounds*, 850 F.2d 692 (6th Cir. 1988) (excluding expert testimony of intellectual

13  property lawyer who opined that mark was not generic, since testimony was intended to instruct

14  on applicable trademark law).

15        The nature of the opinions makes them inadmissible.  So too does their lack of any

16  evidentiary or factual support.  Opinions 2, 4, 5 and 7 are premised on the fact that South Cone

17  consumers are aware of Timex's REEF GEAR watch.  Harbaugh Dep. p. 203, l. 7 – p. 205, l. 11.

18  Yet Mr. Harbaugh has no evidence that there is such an awareness; he admitted that he simply

19  assumed this.  Harbaugh Dep. p. 115, ll. 4-12.  His testimony also makes it clear that he lacked a

20  good faith basis for his assumption.  For example, Mr. Harbaugh testified that he did not know

21  whether Timex and South Cone both show their products at the same trade shows.  Harbaugh

22  Dep. p. 12, ll. 3-13; p. 97, l. 18-p. 98, l. 7.  At the two locations where Mr. Harbaugh actually

23  saw the Timex REEF GEAR watch he noted that South Cone's REEF brand products were not

24  sold, *Id.* p. 30, ll. 5-7.  And at the locations he visited that sold South Cone's REEF products

25  (the names of which were provided directly by plaintiff), he was not sure if any sold TIMEX

26  watches.  *Id.* p. 10, ll. 9-24.  Indeed he had no knowledge of how many retailers (if any) sold

27  both parties' products, *Id.* p. 116, ll. 4-6, but was "pretty confident" that there were only a very

28  small percentage of retailers of South Cone products that sold Timex products.  *Id.* p. 16, ll. 10-

16. As to advertising, Harbaugh never saw advertisements for any Timex product and any South Cone product in the same publication. *Id.* p. 93, l. 21-p. 94, l.5; p. 109, ll. 6-9. Finally, Mr. Harbaugh testified that he "knew" that purchases of Timex REEF GEAR and South Cone products <u>did not overlap</u>. Harbaugh Dep. p. 99, ll. 17-24.

Mr. Harbaugh recognized that without consumer overlap there could be no harm to South Cone. He also admitted that, despite the fact that Timex has been selling the REEF GEAR watch since 1995, there was <u>no</u> evidence of any harm to plaintiff. Harbaugh Dep. p. 142 ll. 15-25; p. 143, ll. 1-5; p. 182, ll. 10-15; p. 184 ll. 4-10; p. 188, l. 20-p. 189, l. 1; p. 205 ll. 12-15.[3] Mr. Harbaugh testified that "I don't believe that it has had yet a significant impact on the [REEF] brand, and at least I can't prove it." Harbaugh Dep. p. 183, l. 17-p. 184, l. 1. There are simply no facts to support Mr. Harbaugh's opinions that the presence of the watch in the market will now have an impact. The facts that Mr. Harbaugh does rely on are either incomplete or are contradicted by Mr. Harbaugh's own testimony. *Under these circumstances, the opinions are not reliable and could not assist the trier of fact.*[4]

The only way Mr. Harbaugh could reach his opinions 2, 4, 5 and 7 is by assuming facts he knows are not true. Because these opinions lack a foundation they are not reliable and cannot be admitted. *See First Sav. Bank F.S.B. v. United States Bancorp*, 117 F. Supp. 2d 1078, 1086 (D. Kan. 2000) (excluding testimony of expert where expert failed to take into account specific facts of case and instead assumed facts).

There are additional reasons to exclude Mr. Harbaugh's Opinion 4 - - that an association between the parties "will likely create a negative association in the minds of customers of REEF

_____

[3] Mr. Harbaugh's lack of evidence to support his conclusion is further shown by the fact that he did not conduct any independent research in connection with his report. Harbaugh Dep. p. 86, ll. 21-24. Indeed, he stated that he did not conduct his own research to determine the reaction of plaintiff's customers who saw the REEF GEAR mark of defendant nor did he rely on another's research. *Id.* page 111, l. 21-p. 112, l. 1; p. 193 ll. 19-22.

[4] Another indication that the opinion is pure speculation is that a third party has used the mark REEF on products distributed to mass merchandisers outside of South Cone's traditional specialty distribution channels. According to the deposition of Robin Gagnon, a significant number of pairs of sandals under the name PACIFIC REEF were sold through mass merchandisers such as Rite Aid Drug Stores and Safeway. Gagnon Dep. p. 12, l. 12 – p. 16, l. 13; p. 35, l. 2 – p. 37, l. 7; p. 41, ll. 10-15; p. 43, ll. 4-7. Yet there does not appear to have been any effect on the image, distribution channels or franchise of South Cone.

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

and damage the REEF brand including its image, its distribution channels and its franchise." As the basis for Opinion 4 Mr. Harbaugh states that "the image of Timex is in no way harmonious with the image of REEF and the Timex image is not consistent with REEF." Yet Mr. Harbaugh does not know what the image of the Timex REEF GEAR watch is, never tested Timex products among consumers in South Cone's market niche to determine consumer reaction to Timex or its REEF GEAR watch, and has no research concerning the image or perception of Timex' product by consumers in the action sports industry. Harbaugh Dep. p. 130, ll. 12-13; p. 131, ll. 13-22. Since there is no factual support for the opinion it must be excluded. *Transclean Corp. v. Bridgewood Servs, Inc.*, 101 F. Supp. 2d 788, 804 (D. Minn. 2000) (excluding expert opinion on effect of advertising where opinions were "sheer conjecture", "not founded upon any reliable methodology", and were instead "expressions of personal belief.").

Mr. Harbaugh also states as fact that the REEF brand of South Cone is "cool" and, by inference, that Timex is "not cool." There is no basis for this "fact" either. Indeed, Mr. Harbaugh stated that he does not know what plaintiff's consumers actually think are cool or trendy brands and has done no testing of this. Harbaugh Dep. p. 139, ll. 7-22.[5]

With respect to the remaining opinions expressed by Mr. Harbaugh, these must be excluded as well.

Opinion 1

Harbaugh opines that the REEF mark is a strong brand and that the REEF marks are "distinctive and well-known trademarks." In reaching this opinion Mr. Harbaugh did not do any survey nor did he rely on any market research concerning the degree of consumer recognition of

---

[5] Another deficiency in Mr. Harbaugh's Opinion 4 is that the opinion is based on facts that do not exist. Mr. Harbaugh's opinion states that "specialty action sports brands that market outside their traditional distribution channels . . . tend to lose the support and loyalty of their of customers . . ." By his statement, Mr. Harbaugh is assuming that South Cone sells its product only through its traditional distribution channels. However Mr. Harbaugh knows that this is not true. Harbaugh Dep. p. 177 ll. 5-7; p. 179, l. 19-p. 181, l. 123. Among the non-traditional outlets identified by Mr. Harbaugh are Nordstrom, Walt Disney, Legoland and Pacific Sun. Harbaugh Dep., p. 179, ll. 16-22; p. 181, ll. 13-23. According to a documents produced by South Cone sales of REEF product through these non-traditional channels of trade in 1999 were more than $590,000 and in 2000 South Cone sold $1.8 million of REEF product through these non-traditional channels. Perkins Decl. ¶ 14, Exh. K. Mr. Harbaugh conveniently ignored these facts. Harbaugh Dep. p. 175, l. 24-176, l. 5.

the REEF mark.[6]  Harbaugh Dep. p. 102, ll. 2-5.  Moreover, his opinion is not based on an analysis of any of the factors set forth by this court in *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) (the "need" test) and in *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.* 856 F.2d 1445 (9th Cir. 1988) (the "imagination test") that are used to determine whether a mark is strong.

The sole support for Mr. Harbaugh's opinion is the advertising and marketing campaign carried out by South Cone.  Yet he cannot provide information about the circulation of the publications in which plaintiff advertises or the amount of money plaintiff has spent on advertising.  Harbaugh Dep. p. 108, ll. 14-22; p. 109, ll. 18-20.  The mere fact that South Cone advertises, which is not disputed, is not a basis for claiming that REEF is a strong brand or a distinctive and well-known trademark.  *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 280 (S.D.N.Y. 1998) (noting that advertising expenditures alone will not establish secondary meaning, citing *McGregor Doniger, Inc. v. Drizzle, Inc.* (citations omitted)).  Quite simply, Mr. Harbaugh has failed to set forth a sufficient foundation to support Opinion 1 and thus it should be stricken.  *See F.S.B.*, 117 F. Supp. at 1086.

Moreover, the opinion is likely to mislead the fact finder.  As expressed, it suggests that the mark REEF is a well-known brand to purchasers of Timex watches.  Yet during his testimony, Mr. Harbaugh stated that he did not know whether REEF is a strong brand or is well-known among consumers of Timex REEF GEAR watches or is even strong or well known outside plaintiff's market niche.  Harbaugh Dep. p. 104, ll. 5-23.  *Cf. United Phosphorus*, 173 F.R.D. at 688 (expert opinion precluded where witness demonstrated "lack of information" regarding underlying facts in case which were limited to small body of information provided by defendant's counsel).

Opinion 3

In his Opinion 3, Mr. Harbaugh describes what he identifies as the "primary group" of plaintiff's consumers.  On the demographics of plaintiff's consumers there is no need for an

---

[6] Mr. Harbaugh states that he relied on a survey conducted by a third party.  However he was not involved in the creation of the survey, in the coding of it or in its preparation.  He stated that all he knows is "what I read about the

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

1    expert.  South Cone is in the best position to provide these demographics as a matter of fact.  *Cf.*

2    *United States v. Arney*, 248 F.3d 984, 990-991 (10th Cir. 2001) (finding district court did not

3    abuse discretion in excluding financial expert on accounting methods and I.R.S. requirements

4    where defendant had already testified to his understanding of such matters and so was better

5    qualified to testify on such issue).  Certainly the expert report submitted by Mr. Harbaugh

6    provides no independent factual support for his description about the demographics of consumers

7    for plaintiff's products.  *See United Phosphorus*, 173 F.R.D. at 686 ("where proffered expert

8    testimony is not based on independent research, the party must come forward with other

9    objective, verifiable evidence that the testimony is based on 'scientifically valid principles'").

10           <u>Opinion 6</u>

11           Mr. Harbaugh also claims that consumers who see the mark REEF GEAR used by Timex

12   will conclude that the term GEAR is a generic term for equipment or accessories.  A mark is

13   generic if its primary significance in the minds of the consuming public is the product, not the

14   producer.  *PetsMart, Inc. v. Lanrus, Inc.*, No. 91-1721,1992 U.S. Dist. LEXIS 11257, at *21

15   (S.D. Cal. Mar. 30, 1992) (quoting *Anti-Monopoly, Inc. v. General Mills Fun Group* (citations

16   omitted)).  The most common way of establishing if a mark is generic is through consumer

17   surveys.  Here, Mr. Harbaugh did not undertake any market research to determine how

18   consumers perceive the term GEAR when used by Timex as part of its REEF GEAR mark on

19   watches.  Harbaugh Dep. p. 189, l. 21-p. 190, l. 12.  All Mr. Harbaugh can testify to is that <u>to</u>

20   <u>him</u> "gear" has a certain meaning.  *Id.* p. 189, ll. 16-20.  Mr. Harbaugh is incapable of opining on

21   what consumers perceive when they see the phrase REEF GEAR used on a Timex watch.  As

22   such, his opinion has no reliability or validity.  *Transclean Corp.*, 101 F. Supp. 2d at 804

23   (excluding testimony of expert witness on effect of advertising as unreliable where witness failed

24   to conduct survey or market research and instead offered "subjective belief as to how the

25   common person would view [the] advertisements").

26           Further, this opinion calls for a conclusion on an ultimate issue of law.  Aside from the

27   fact that Mr. Harbaugh has no training in the law to allow him to reach such a conclusion,

28

methodology in the report."  Harbaugh Dep. p. 102, l. 9-p. 103, l. 3.

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

1  opinions by "experts" as to ultimate issues of law, such as this, are not admissible. *See, e.g.,*

2  *Ideal World Marketing Inc. v. Duracell Inc.*, 15 F. Supp. 2d 239, 244 (E.D.N.Y. 1998) *aff'd* 182

3  F. 3d 900 (2d Cir. 1999) (expert report by trademark law expert as to whether a mark is

4  suggestive or descriptive excluded as "imping[ing] upon the Court's role").

5      Opinion 8

6          Mr. Harbaugh indicates that sports watches are related to products already sold by South

7  Cone and are related to South Cone's existing REEF product line.  He further opines that sports

8  watches are a natural extension of South Cone's product line.  Yet, Mr. Harbaugh has no

9  evidence of any company in the beach sandal business such as South Cone who has expanded

10  into the sports watch product line.  Harbaugh Dep. p. 198, ll. 8-15.  Thus, his general hypothesis

11  about expansion is irrelevant given the facts of this case.  In addition, while there might be a

12  possibility that some companies in the action sports industry may naturally expand into the watch

13  category, there is no evidence that this would apply to South Cone.  Indeed, Mr. Harbaugh was

14  not aware of any South Cone distributors who indicated an interest in selling South Cone

15  watches under the REEF mark.  *Id.* p. 10, l. 25-p. 11, l. 3; p. 200, l. 21 – p. 201, l. 14.  Thus his

16  opinion is unsupported speculation and not admissible.

17                          *  *  *  *  *  *

18          In determining whether an expert report is admissible, the Court must make sure that the

19  expert has significant knowledge relating to the opinion given, that the expert is neutral and

20  independent, and that the report is supported by verifiable facts.  Here, Mr. Harbaugh has no

21  expertise in any area on which he has given his opinion.  And Mr. Harbaugh's opinions are based

22  on inaccurate or incomplete facts.[7]  Given these basic faults, it would be unduly prejudicial to

23  _____

24  _____

25  [7]  Moreover, Mr. Harbaugh lacks independence. While the business biography submitted by Mr. Harbaugh and his expert report do not reveal any prior connection to the plaintiff, Perkins Decl., Exhs. D and E, throughout the year 2000 Mr. Harbaugh was a consultant for South Cone and received payment in excess of $50,000. Harbaugh Dep. p.

26  23 ll. 3-10; p. 38, ll. 18-22. This past work for South Cone led directly to Mr. Harbaugh being retained as an expert for South Cone. Harbaugh Dep. p. 8, ll. 1-5; p. 12, ll. 21-22; p. 21, ll. 3-6.

27  Mr. Harbaugh's lack of independence is further thrown into doubt by the apparent influence that Daniel DeCarlo,

28  counsel for South Cone, had in connection with the report submitted. For example, Mr. Harbaugh stated that he submitted a more extensive writing "but Mr. DeCarlo convinced me that I was just saying the same thing over and over again." Harbaugh Dep. p. 77, ll. 2-5. Those more extensive writings were never provided. Perkins Decl. ¶ 6.

1 | Timex to allow the report of Mr. Harbaugh to be admitted under the cloak of an expert report and

2 | it should therefore be excluded. *Cf. Jinro*, 266 F.3d at 1006 (noting impact on jury when opinion

3 | of witness is "dignified" as expert testimony).

4 | **III.   THE EXPERT REPORT OF PETE ROCKY MUST BE EXCLUDED**

5 | The expert report of Mr. Rocky, the surf enthusiast, suffers from many of the same

6 | failings as Jeffrey Harbaugh's. As a preliminary matter, Mr. Rocky has not set forth any

7 | foundational facts or provided any evidence that would support any of his opinions. Indeed, in

8 | many instances, his opinions are based on his personal experiences. In no instances are his

9 | opinions based on how consumers perceive either the Timex REEF GEAR product and brand

10 | name or South Cone's REEF product and brand name.

11 | Rule 702 requires that the opinions offered by Mr. Rocky be based on something more

12 | than his subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 599. Here, it is

13 | impossible to see how any of Mr. Rocky's opinions meet this requirement. Certainly there is

14 | nothing to suggest that his personal experiences provide a sufficient basis for his opinions. What

15 | he has offered is a subjective opinion reached without the benefit of any theory, factual basis,

16 | data, research, methodology, principle or anything else that is subject to scrutiny, verification or

17 | review. As such there is no basis for the admissibility of his expert report. *See F.S.B.*, 117 F.

18 | Supp. 2d at 1085 (finding expert testimony inadmissible under 702 where plaintiff had failed to

19 | demonstrate to court that expert witness' reasoning or methodology had been tested, been

20 | subjected to peer review, has a known or potential rate of error or has attained general

21 |

22 | Mr. DeCarlo had Mr. Harbaugh delete sections of the report. *Id.* p. 77, ll. 16-20. Mr. Harbaugh included certain

23 | opinions because Mr. DeCarlo told him that the issues were important in proving Reef's case. Indeed, Mr. DeCarlo went so far as to give Mr. Harbaugh the words to use in his opinions. *Id.* p. 184, l. 11-p. 185, l. 5.

24 | Most significantly, according to Mr. Harbaugh, Mr. DeCarlo asked for an opinion "on what happens to a brand in the actions sports market when it is associated with another brand that isn't part of that market and what damage

25 | there might be and how it might impact that brand." Harbaugh Dep. p. 127, l. 22-p. 128, l. 1. Thus Mr. Harbaugh was essentially told by Mr. DeCarlo to assume that an association exists between the Timex REEF GEAR brand and

26 | the South Cone REEF mark. *See American Home Products Corp. v. Barr Labs., Inc.*, 656 F. Supp. 1058 (D.N.J. 1987), *aff'd.* 834 F.2d 368 (3rd 1987) (weight accorded to survey results weakened because survey expert consulted

27 | with attorneys in defining issues on which to survey); *Cf. Proteus Books, Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 515 (2d Cir. 1989) (noting with approval district court's ruling that witness could not be qualified as expert

28 | because he was "an interested party" in case; *Marshall v. Perez Arzuaga*, 828 F.2d 845, 852 (1st Cir. 1987) (assuming, without deciding, that expert could be disqualified for partiality), *cert. denied*, 484 U.S. 1065 (1988).

acceptance in scientific community); *Transclean Corp.*, 101 F. Supp. 2d at 804 (expert testimony not admitted where it was nothing more than subjective belief).

Turning to the specific opinions, it is clear that when the basis for the opinions are examined there is no factual support for any of them and none are based on relevant specialized knowledge.

### Opinion 1

Mr. Rocky's first opinion is that there is a market niche consisting of the "beach-lifestyle-surf industry." What this means is unclear. Even if such a market exists, there is no indication as to why this is relevant to the issues in this case, nor is there any indication of whether either South Cone or Timex is in that niche. Accordingly, this opinion is merely editorial comment and must be disregarded.

### Opinion 2

Mr. Rocky's second opinion is his "belief" that the REEF mark was famous by 1994. Mr. Rocky's belief in the fame of the REEF mark is irrelevant. The question is whether the REEF mark of South Cone was famous, well known and distinctive among consumers when Timex adopted its REEF GEAR mark and if so, among what groups of consumers. The opinion offered by Mr. Rocky suffers from much of the same problems as Mr. Harbaugh's opinion on the same issue. Like Mr. Harbaugh, Mr. Rocky did not do any survey or rely on any market research concerning the fame of the REEF mark; he did not look at any of the factors set forth by the Ninth Circuit that are used to determine whether a brand is strong; and he did not provide any evidence as to whether the mark is famous to consumers of Timex products in general or the Timex REEF GEAR watch in particular. The facts that Mr. Rocky relies on simply do not support his opinion. Mr. Rocky refers to the fact that South Cone advertises yet he does not state where the advertisements appeared, the circulation, or how many people were exposed to the REEF mark. The mere fact that there were advertisements for the REEF brand and that Mr. Rocky saw the REEF products in the surf shops does not provide sufficient foundational facts to support his opinion.

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

### Opinion 4

Mr. Rocky opines that watches are a natural expansion of South Cone's current product line. This opinion is similar to Mr. Harbaugh's opinion 8 and is not admissible for the same reasons. Mr. Rocky does not provide any examples of a company who, like South Cone, is in the business of making and selling beach sandals that has successfully expanded into the area of watches. All Mr. Rocky can offer is his opinion that South Cone could be successful. Yet this is speculation unsupported by verifiable fact and therefore must be excluded.

### Opinion 5

Like Mr. Harbaugh before him, Mr. Rocky has given an opinion that REEF is considered "hip and cool." And like Mr. Harbaugh before him this opinion is without any evidentiary or factual support. While the REEF brand might be considered "hip and cool" to Mr. Rocky, there is no evidence, nor has Mr. Rocky provided any, that would suggest that the mark is considered hip and cool by other consumers. Mr. Rocky has not done any market research nor does he rely on any. For an expert opinion to be accepted, it must be based on some underlying facts. Here there is nothing but Mr. Rocky's own beliefs. As such the opinion must be excluded. *Transclean Corp*, 101 F. Supp. 2d at 804.

### Opinion 6

Mr. Rocky's opinion 6 almost mirrors Mr. Harbaugh's opinion 3 in describing the demographics of certain consumers. While Mr. Harbaugh described these demographics as relating to the consumers of South Cone, Mr. Rocky simply refers to them as the demographics of consumers in the "beach-lifestyle-surf industry." The opinion is irrelevant because it lacks a foundation, namely that the consumers being described are the consumers of either South Cone or Timex.

### Opinion 7

Mr. Rocky's opinion 7 is that South Cone's REEF brand would be damaged "if people confused or thought an affiliation had taken place between REEF and TIMEX." This is sheer speculation on many fronts. First, Mr. Rocky presents no evidence that there has been any confusion caused as a result of Timex's use of the mark REEF GEAR or that any confusion is

14

1  even likely.  Nor has he presented any evidence that consumers of South Cone's REEF product

2  believe that there is an affiliation between South Cone and Timex.  Without this foundation, the

3  opinion is mere speculation, which is not admissible.

4      Opinion 8

5      Mr. Rocky mirrors Mr. Harbaugh's opinion 6 by opining that the word GEAR is generic.

6  The same reasons that lead to the exclusion of Mr. Harbaugh's opinion on this issue apply

7  equally to Mr. Rocky's opinion.

8      Opinion 9

9      Mr. Rocky states that consumers principally recognize the REEF mark of South Cone as

10 opposed to any other marks that South Cone may use.  Is this opinion based on market research

11 or consumer perception?  No.  Mr. Rocky states that he bases his opinion on the grounds that he

12 refers to South Cone as REEF and has always heard it referred to that way.  The fact that he has

13 heard South Cone referred to as REEF does not support his opinion that "consumers principally

14 recognize REEF."  Again, this is a personal opinion based on no evidence or facts and as such is

15 inadmissible.

16                              * * * *

17     Mr. Rocky may indeed have specialized knowledge with respect to surfing.  The Court

18 and jury, however, do not need advice on nuances of the sport.  He does not have specialized

19 knowledge however with respect to consumer perception or with respect to the vast majority of

20 opinions that he has rendered.  In the guise of an expert report, Mr. Rocky offers his personal

21 opinion only.  This is not the function of an expert report.  *Jinro*, 266 F.3d 993 (testimony of

22 witness based on isolated and <u>own</u> casual experience with Korean businesses was improperly

23 admitted and dignified as expert testimony).  Mr. Rocky does not purport to be the typical

24 purchaser of either a Timex REEF GEAR watch or of South Cone's REEF product.  He is

25 unqualified to speak on behalf of all consumers and he has provided no facts or evidence that

26 would allow him to do so.  Under these circumstances, Mr. Rocky's expert report must be

27

28

1 | excluded.  In the alternative, if the entire report is not excluded, then opinions 1-2 and 4-9 should

2 | not be admitted as they do nothing to assist the trier of fact. [8]

3 | ## IV.    THE BOTHUN REPORT IS INADMISSIBLE

4 | Timex is not arguing that Ms. Bothun is not an expert or is not qualified to render

5 | opinions about damages.  However, credentials alone are not a sufficient basis for the admission

6 | of an expert report.  Rather, in order for an expert report to be admitted, not only must the expert

7 | have specialized knowledge, but the expert must also apply that specialized knowledge to facts

8 | that he or she independently verifies.  *United Phosphorus Ltd.*, 173 F.R.D. at 688 (excluding

9 | testimony where expert based opinion on small body of information provided by defendant's

10 | counsel); *Daubert*, 509 U.S. at 593 (expert testimony must satisfy standard of "evidentiary

11 | reliability" and a relevance requirement.").  Here, Ms. Bothun's report, from her description of

12 | South Cone to her calculation of damages, is based on unverified information given to her by

13 | South Cone and its lawyers; is based on irrelevant facts or impermissible calculations; or is

14 | contrary to law.  As a result, the report and Ms. Bothun's opinions are inadmissible.

15 | Ms. Bothun's expertise in this case does not relate to whether South Cone can establish

16 | liability.  Indeed, Ms. Bothun was told to assume that South Cone would prevail.  Bothun Dep. p.

17 | 118, ll. 23-25.[9]  Rather, her opinions are limited to the calculation of Timex's sales, profits and

18 | incremental profit from its sale of REEF GEAR watches from the period 1994 to 2000; a

19 | reasonable royalty rate payable by Timex to South Cone on the sale of REEF GEAR watches for

20 | the period 1994 to 2000; South Cone's cost of corrective advertising; South Cone's lost profits;

21 | and prejudgment interest. Perkins Decl. Exh. I.  These categories were determined by South

22 | Cone's lawyers.  Bothun Dep. p. 89, ll. 7-13.  As Ms. Bothun recognizes, the categories may be

23 | duplicative or overlap. Perkins Decl., Exh. I, p. 4.  However she has done no analysis to

24 | determine the degree of duplication or overlap. Bothun Dep. p. 104, l. 12-p. 105, l. 1.  And a

25 | jury may not be able to do so either.  Once her opinion is made available, a jury will assume

26 |

27 | [8] With regard to Mr. Rocky's opinions 3 and 10, Timex, for purposes of this motion only, states that the experience
of Mr. Rocky as a surfer would allow him to provide the opinions expressed.  However, should Mr. Rocky provide

28 | these opinions at trial, Timex reserves the right to object on grounds of qualification, expertise and relevance.

1 │ there is liability and that all of the damages calculated by Ms. Bothun should be awarded. This is

2 │ unduly prejudicial to Timex. When you combine this potential prejudice to Timex with the fact

3 │ that the opinions themselves are fatally flawed, the Court must exclude the report in its entirety.

4 │ 1.    Calculations of Timex's Sales and Incremental Profit Margin.

5 │        In providing a calculation of the total sales of the Timex REEF GEAR watch and

6 │ Timex's incremental profit margins, Ms. Bothun was told to simply accept the figures provided

7 │ by Timex. Perkins Decl., Exh. I at p. 5. Having Ms. Bothun merely reiterate data that Timex has

8 │ already provided simply does not aid the fact finder in any significant or material way.[10]

9 │ Certainly it is not something on which expert testimony is needed. *United States v. 99.66 Acres*

10 │ *of Land*, 970 F.2d 651, 657 (9th Cir. 1992) (finding no error in district court's ruling that expert

11 │ was not qualified as expert in appraisal and was "merely calculating numbers" provided by

12 │ defendant). *Cf Seatrax, Inc. v. Sonbeck Int'l., Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (excluding

13 │ expert testimony of witness on issue of plaintiff's lost profits where expert had no formal

14 │ training in accounting and did not conduct independent examination of defendant's sales figures,

15 │ which were provided to him by plaintiff's attorneys). As such, there is no reason for Ms.

16 │ Bothun's first opinion or for her to testify to the matters contained therein.

17 │ 2.    Reasonable Royalty

18 │        Ms. Bothun has calculated a reasonable royalty that she apparently believes Timex

19 │ should pay to South Cone. This part of the report is based on the incorrect assumption that this

20 │ measure of damages is available.

21 │

22 │

─────────────────────────────────────────

23 │ [9] Transcripts of Ms. Bothun's deposition taken August 21 and August 23, 2001, are annexed as Exhibit 3 to the Joint
24 │ Notice of Lodgement.

25 │ [10] In addition the inclusion of this first opinion is highly prejudicial since it suggests to the jury that South Cone is
    │ entitled to the total amount of Timex's sales should South Cone prove liability. As a matter of law, if a plaintiff
26 │ establishes infringement or unfair competition, the only damages that are potentially available are the defendant's
    │ profits directly attributable to the infringement. *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir.
27 │ 1999). Here, however, Ms. Bothun did not take any steps to determine the percentage of revenue earned by Timex
    │ attributable to either the word REEF or to factors other than the use of the word REEF. Bothun Dep. p. 107, ll. 5-12.
28 │ Ms. Bothun did admit that the sales figures set forth in her first opinion as well as on the exhibits supporting the
    │ calculation are not attributable exclusively to the use of the term REEF. However she cannot testify as to what
    │ percentage of the revenue is attributable to Timex' use of the term REEF. *Id*. p. 109, ll. 7-21.

17

In the Ninth Circuit, a reasonable royalty can only be awarded if the plaintiff has an established history of licensing. *Trovan v. Pfizer, Inc.*, No. CV-98-00094, 2000 WL 709149, at *15-18 (C.D. Cal. May 24, 2000), *appeal dismissed*, -- F.3d – No. 00-56083, 2001 WL 1346020 (9th Cir. Nov. 1, 2001) ("The Ninth Circuit does not recognize reasonable royalties as a measure of damages where there is no evidence a party intended to license their trademark.) Ms. Bothun admitted that South Cone had not entered into any license agreements and that she is unaware of South Cone even discussing royalty rates in connection with the licensing of the REEF Mark. Bothun Dep. p. 123, ll. 2-7; 18-25. Given that South Cone has no licensing history, a reasonable royalty calculation is not available as a matter of law. *Id.* To allow Ms. Bothun to opine on this would confuse the fact finder and is prejudicial because it suggests that such recovery is available when it is not. *Cf. United States v. Hook*, 195 F.3d 299 (7th Cir.)(holding district court did not abuse discretion in limiting expert's testimony since expert opinion was "inaccurate as a matter of law"), *cert. denied*, 529 U.S. 1082 (2000).

Even if the opinion were not inadmissible on the grounds that it is contrary to law, it is inadmissible because it is not reliable. Because South Cone has no history of licensing, Ms. Bothun adopted what she called a market approach in which she "searched our database for licenses that I thought might lend some light to the royalty question, and I started by looking for shoe manufacturers that produced watches." Bothun Dep. p. 127, ll. 4-7. However Ms. Bothun admits that she found no license agreements that met this requirement. *Id.* p. 127 ll. 8-10. This should have suggested to Ms. Bothun that this approach to determining a reasonable royalty was not appropriate in this case. Undeterred, she based her calculation of a reasonable royalty on licenses between companies that are neither in the same business as nor are comparable in nature to the parties here.

As reflected in her expert report, Ms. Bothun looked at five agreements.[11] She examined a license agreement between Tiffany & Co. and the designer Paloma Picasso wherein Ms. Picasso was hired to design certain jewelry for Tiffany, granted to Tiffany the exclusive right and

---

[11] The agreement are attached as Exhibits L to P to the Perkins Declaration.

1  license to sell jewelry that she created, and granted Tiffany the right to use the name Paloma

2  Picasso.  How is a license agreement between an internationally famous jewelry designer and a

3  preeminent jewelry company comparable to a license agreement between a beach sandal

4  company and Timex?  Ms. Bothun also considered a license agreement between Teva Sports

5  Sandals and Deckers Corporation.  In that agreement, Deckers Corporation was seeking a license

6  to sell, use and manufacture sandals designed by the designer for Teva and to use the TEVA

7  mark outside the U.S.[12]  The third license relied upon by Ms. Bothun was between Quiksilver

8  Inc. and (the aptly named) Omareef USA, Inc.  There, the licensor was an international

9  manufacturer and distributor of a wide range of products including shorts, ski wear, soft wear

10  clothing and surfing accessories.  The fourth agreement considered by Ms. Bothun was between

11  Vans and an Italian corporation allowing for the use of the VANS trademark in numerous

12  countries outside the United States.  And finally, Ms. Bothun examined a license in which Signal

13  Apparel Company, was granted a license to use the sneaker mark KEDS for clothing

14      Not a single license relied on by Ms. Bothun concerned a company specializing in the

15  sale of beach sandals licensing a mark to an established watch company.  Not a single one of the

16  licenses concerned parties who are in the same position vis a vis one another as are Timex and

17  South Cone.  Since none of the license agreements looked at by Ms. Bothun in any way came

18  close to replicating the market conditions of the parties, her opinion on reasonable royalties

19  based on her review and comparison of these licensing agreements is based on pure speculation

20  and must therefore be excluded.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th

21  Cir.), *cert. denied*, 510 U.S. 815 (1993) ("Trademark remedies are guided by tort law principles.

22  As a general rule, damages that result from a tort must be established with reasonable certainty . .

23  . [A] reasonable basis for computation must exist.  Many courts have denied a monetary award in

24  infringement cases when damages are remote and speculative.") (internal citations omitted).

25

26  ─────────────

27  [12] Ms. Bothun states that the Teva license is the most appropriate one to rely on in this case.  Bothun Dep. p. 146, l.
    9-112.  Yet the Teva license did not include a watch company nor a company that had a strong market share in

28  watches.  Bothun Dep. p. 149, l. - - p. 150 l. 5.  Also, it was not a license to use a mark on a product that the licensor
    had never manufactured.  Bothun Dep. p. 146, l. 24-p.147, l. 12.

In addition to the "market approach," Ms. Bothun calculated a reasonable royalty based on a "profitability analysis." Specifically, Ms. Bothun opined that South Cone should be entitled to 25% of Timex's profit on its REEF GEAR watch.[13] This opinion has absolutely no basis in the actual marketplace. Ms. Bothun testified that she did not know any watch company that has applied such a rule when seeking to license a third party mark. She did not know how frequently the rule was applied by a licensee who also used a strong and famous house mark like TIMEX on the product in question. She also was not aware of the application of this rule in connection with any license for watches. Bothun Dep. p. 152, ll. 2-12. Because there is no basis for applying this rule to determine a reasonable royalty, this speculative opinion must be stricken.[14] *Lindy Pen Co.*, 982 F.2d at 1407-08.

3.    Corrective Advertising

In her report Ms. Bothun assumed that if injunctive relief were granted, South Cone "would need to conduct a corrective advertising campaign to restore the value of its trademark and correct the misimpression created by Timex's infringing product." Perkins Decl. Exh. I at p. 7. Despite this statement, Ms. Bothun conceded that she is not offering an opinion that corrective advertising is an appropriate measure of damages. Bothun Dep. p. 210, ll. 18-21.

The Ninth Circuit has indicated that the purpose of a corrective advertising award is to "restore the value [of] plaintiff's trademark" lost as a result of the infringement by the defendant. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996). In the past when Ms. Bothun has analyzed the issue by looking at the value of plaintiff's brand prior to defendant's conduct and comparing it to the value of plaintiff's brand after defendant's conduct. The award for corrective advertising is the difference. Bothun Dep. p. 224, l. 20- p. 225, l. 3. This analysis was not done

---

[13] In her expert report, Ms. Bothun states that reasonable royalties can range up to Timex' total incremental profit margin. However, she testified that she "would criticize somebody if they assumed all of the profitability would be paid out in the form of a royalty." Bothun Dep. p. 153, ll. 20-22. Thus, to the extent that Ms. Bothun seeks to provide an expert opinion that South Cone is entitled to reasonable royalties that equal Timex' total profit margin, such an opinion should be excluded based on Ms. Bothun's own critique of it.

[14] To the extent that Ms. Bothun's 25% rule is accepted, her follow-up to that opinion namely that South Cone is entitled to an even greater allocation of profits cannot be credited. This position is based almost entirely on statements made by Jeffrey Harbaugh. However as argued above Mr. Harbaugh's expert report must be excluded.

here because plaintiff failed to give Ms. Bothun the profitability information she requested. *Id.* p. 225, ll. 8-19. That South Cone did not provide the information is not surprising since it conceded at its 30(b)(6) deposition that South Cone's sales have gone up every year and that it could not tell "what impact, if any" Timex's sales of the REEF GEAR watch have had on South Cone. Aguerre Dep. p. 207, ll 11-19.

Unable to conduct an inquiry into whether in fact there was a loss in the value of the REEF mark, Ms. Bothun instead cobbled together an opinion concerning a corrective advertising award that does not find acceptance in any case. Ms. Bothun first estimated the average advertising expenses of South Cone as a percentage of South Cone's domestic sales. Next, she applied this percentage to Timex's gross revenue for the Timex REEF GEAR watch for each of the years Timex sold the product. She then took 25% of this figure and opined that this would be the appropriate amount to award for corrective advertising. Perkins Decl., Exh. I at p. 7.[15] When asked at her deposition for cases that supported her calculation, Ms. Bothun was unable to provide any. In her corrections to her deposition she made reference to the *Big O* case. Bothun Dep. p. 222, l. 24 – 223, l. 11. However, that case does not support the calculation of corrective advertising performed by Ms. Bothun.

The *Big O* case referred to an award whereby companies who engage in false advertising are required "to spend 25 percent of their advertising budget on corrective advertising." *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber, Co.*, 561 F.2d 1365, 137 (10th Cir. 1977) *cert. denied*, 434 U.S. 1052 (1978). Here, Ms. Bothun did not apply her 25% rule to the advertising budget of Timex for its REEF GEAR watch. Instead, Ms. Bothun looked at Timex's total sales for its REEF GEAR mark. No case supports such an analysis. The analysis is a substitute for the calculation Ms. Bothun should have done were this theory of recovery even viable - - namely to determine the actual loss in the value of plaintiff's mark - - but which she could not do as a result of plaintiff's failure to provide necessary information. If plaintiff refuses to provide the necessary information to its expert to allow her to properly calculate an award for corrective

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

advertising, plaintiff should not be rewarded by allowing its expert to calculate an award of corrective advertising expenses using a method that finds no support in the law.

4.   Lost Profits

Ms. Bothun also calculated the amount of profits South Cone allegedly lost due to its failure to launch a watch line. The opinion simply cannot be credited. First, Ms. Bothun was told to assume that "but for" Timex, South Cone would have launched a watch line. Perkins Decl. Exh. I, p. 9. However, at deposition, South Cone could name no one that had indicated it could not expand into watches due to Timex's presence in the market place. Aguerre Dep. p. 203, l. 14 – p. 204, l. 7. Thus, there can be no lost profits since the TIMEX REEF GEAR watch has nothing to do with South Cone's ability to enter the watch market.

In any event, the calculation according to Ms. Bothun, "was based on the business plan assumed by" Fernando Aguerre, the owner of plaintiff. Bothun Dep. p. 55, ll. 15-16. The plan was not independently reviewed or verified by Ms. Bothun. Indeed, Ms. Bothun didn't even see it. Rather, assumptions concerning the success of a watch line were conveyed to Ms. Bothun orally by plaintiff's principal. Bothun Dep. p. 55, ll. 15-25; p. 60, ll. 20-22. There was no other input.

Instead of conducting any independent analysis to determine whether South Cone could launch a watch line or whether such a watch line would be successful, Ms. Bothun instead took on face value the opinion of Fernando Aguerre that 90% of stores currently selling plaintiff's products would also sell a watch by plaintiff. Bothun Dep. p. 8, ll. 21-24; p. 10, ll. 19-23; p. 63, ll. 17-25. Ms. Bothun has no knowledge that any distributor of South Cone's products, no less 90% of them, would sell watches. Id. p. 70, ll. 24-p.71, l. 2. She took it on face value that South Cone could successfully expand to watches even though the company's prior attempt to expand its product line to skate shoes had proven disastrous. Bothun Dep. p. 232, l. 14 – p. 233, l. 18; Harbaugh Dep. p.49, ll. 2-16, p. 148, l. 8 – p. 149, l. 13. Ms. Bothun took on face value Mr. Aguerre's opinion that there would be a 50% profit margin on South Cone watches. Bothun

---

[15] As an alternative to using the average advertising expenses as a percentage of sales from South Cone's data, Ms. Bothun looked at average advertising expenses as a percentage of net sales of third parties whose businesses are not

1 Dep. p. 9, ll. 9-13. This, despite the fact that South Cone had no experience producing or

2 manufacturing watches. *Id.* p. 61, ll. 4-6. What is more remarkable is that Ms. Bothun accepted

3 this 50% profit margin figure even though she had no knowledge of any company similarly

4 situated to South Cone that expanded to watches and had such a profit margin, *Id.* p. 64, ll. 16-

5 25, and even though she knew that profit margins for other watch lines are in the area of 20-25%.

6 *Id.* p. 100, l. 6 – p. 101, l. 3.[16] Moreover, while Ms. Bothun has criticized other experts who

7 have calculated lost profits because they used an overly aggressive growth rate (Bothun Dep. p.

8 28, ll. 13-25), here Ms. Bothun turned an uncritical eye to the 50% profit margin and 90%

9 distribution figures assumed by plaintiff. Ms. Bothun also accepted <u>on face value</u> Mr. Aguerre's

10 assumption that South Cone watches would sell for between $80 to $100. Bothun Dep. p. 62, ll.

11 20-22. Ms. Bothun not only did not independently verify this amount but she also was not aware

12 of the basis for Mr. Aguerre's figure. *Id.* p. 65, l, 14-p. 65, l. 1.

13 However, Mr. Aguerre's analysis appears to have been cobbled together solely for the

14 purposes of this litigation and only very recently. At his deposition on December 12, 2000,

15 when asked whether South Cone had considered extending into the watch category, Mr. Aguerre

16 testified that South Cone "had an offer from another [unidentified] supplier maybe like four or

17 five years ago." Aguerre Dep. p. 112, ll. 14 – 24. He testified that it was a "challenging

18 environment" and the "time wasn't ripe" for South Cone to go into the watch field. *Id.* Mr.

19 Aguerre did not testify to any business model or other calculations performed in anticipation of

20 going into the watch business.

21 In her expert report Ms. Bothun does not provide any indication of how she calculated the

22 lost profits. There is no chart showing the calculations or setting forth the figures used. As she

23 explained it, she "put all the assumptions together that Mr. Aguerre had given me to come up

24 with a calculation." Bothun Dep. p. 9, ll. 16-18; p. 71, ll. 14-17. Ms. Bothun did the math, Mr.

26 comparable to those of South Cone. Perkins Decl., Exh. I at p. 7.

27
28 [16] Ms. Bothun testified that she believed the 50% profit margin "seemed reasonable" because it was comparable to Timex' profit margin. Bothun Dep. p. 9, ll. 22-25; p. 64, ll. 5-15. Yet South Cone and Timex are different companies. Timex is an expert in watch manufacturing and distribution. South Cone has no experience in the field. Given these differences, there is no logical basis for imputing Timex' profit margin to South Cone.

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2

Aguerre supplied the data. Under F.R.E. 702, Ms. Bothun cannot proffer an expert opinion based entirely on unverified assumptions especially where those unverified assumptions are provided by the party in interest. *See Seatrax*, 200 F.3d at 372 (excluding testimony where witness, in calculating lost profits, relied solely on sales figures provided by party in interest). Under these circumstances, there is simply no basis for admitting Ms. Bothun's opinion and calculations concerning lost profits. *Id*; *Mac Sales v. E.I. du Pont de Nemous & Co.*, 1996 U.S. Dist. LEXIS 3199 (E.D. La. March 8, 1996) (excluding testimony of expert witness on value of plaintiff's hypothetical business was proper where calculation of future lost profits based on pure conjecture and speculation); *See also Total Containment, Inc. v. Dayco Prods, Inc.*, No. 1997-CV-6013, 2001 U.S. Dist. LEXIS 15838 (E.D. Pa. Sept. 6, 2001) (excluding expert testimony on projecting plaintiff's lost sales where, inter alia, expert relied on data from plaintiff's executive and could not explain how figure was arrived at, and where expert failed to compute figure on own despite availability of sales figures).

As if the above were not a sufficient basis for excluding the calculation of lost profits, there are other factors that also require its exclusion. For example, she did not consider whether South Cone had the financial ability to enter into the watch market. Bothun p. 62, ll. 7-10; p. 231, ll. 14-22. She did not consider the fact that South Cone had never distributed a watch line and thus had no expertise in doing so. She did not consider the possibility that people would not purchase the watches. Bothun Dep., p. 230, ll. 2-3. She did not consider the possibility that the product may not have been profitable. *Id.* p. 230, ll. 4-6. She did not consider the fact that, despite being in business since the late 1980's, South Cone had never tried to launch a watch line. *Id.* p. 238, l. 22 – p. 239, l. 1. These omissions require the exclusion of Ms. Bothun's opinion on the issue of lost profits. *F.S.B.*, 117 F. Supp. 2d at 1084-85 (court excluded expert testimony on lost profits where expert failed to consider factors beyond defendant's allegedly infringing activities.) Ms. Bothun is offering an opinion in which she is assuming that a business which South Cone has never entered will be profitable. Bothun Dep. p. 244, ll. 6-9. This is pure

speculation based on the uncorroborated opinion of plaintiff's founder.  It is not admissible.[17]

*KW Plastics v. United States Can Co.*, 131 F.Supp 2d 1289, 1293 (M.D. Ala. 2001) (excluding

expert testimony where expert impermissibly justified his analysis based upon his "subjective

beliefs and citing <u>Kumho</u>).  *TDM Partners v. Rolm Corp.,* No. C-89-20387, 1991 U.S. Dist.

LEXIS 14295, at *20-21 (N.D. Cal. Sept. 26, 1991) (expert opinion regarding value of product

excluded whether expert assumes facts not accounted for by actual market circumstances).

## CONCLUSION

For the reasons set forth above, defendant respectfully requests that its Motion in Limine

be granted and that expert reports and opinions of Jeffrey Harbaugh, Pete Rocky and Deborah

Bothun be excluded.

Dated:  November 30, 2001

Marie V. Driscoll
Patrick T. Perkins
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900
Fax: (212) 813-5901

Edward J. McIntyre (SBN 080402)
William McCurine, Jr. (SBN 66773)
SOLOMON WARD SEIDENWURM &
SMITH, LLP
401 B Street, Suite 1200
San Diego, CA 92101
Tel: (619) 238-4823
Fax: (619) 231-4755
*Attorneys for Defendant*
*Timex Corporation*

---

[17] Prior to determining the admissibility of Ms. Bothun's report, the Court must first determine whether damages are even appropriate here.  Timex launched its REEF GEAR mark in 1995.  Timex's registration for REEF GEAR for watches issued on September 19, 1995.  Pursuant to the Lanham Act, this constitutes constructive notice to South Cone as of that date.  15 U.S.C. § 1072.  Yet suit was not filed until November 9, 1999.  This delay precludes the recovery of monetary damages.  *Stx, Inc. v. Bauer USA, Inc.*, 43 U.S.P.Q. 2d 1492, (N.D. Cal. 1997).  At a minimum, in order to avoid some of the prejudice set forth above, the Bothun report if not excluded in its entirety, should only be submitted to the trier of fact if South Cone establishes liability and if South Cone establishes an entitlement to the various forms of relief identified in Ms. Bothun's report.

MEMORANDUM IN SUPPORT OF TIMEX MOTION IN LIMINE TO EXCLUDE EXPERTS MOTION 1 OF 2